**Earnest William SHELTON, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. A–17525.**

Court of Criminal Appeals of Oklahoma.

July 19, 1972.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

BUSSEY, Presiding Judge:

Appellant, Earnest William Shelton, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Oklahoma, for the offense of Assault and Battery With Intent to Kill, After Former Conviction of a Felony; his punishment was fixed at twenty-five (25) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

Prior to the trial, the court conducted an evidentiary hearing outside the presence of the jury wherein Officer Weede testified that on July 16, 1971, he had a conversation with Mr. and Mrs. David Nantze at the University Children's Hospital. They were given approximately twenty-five to thirty pictures of similarly aged Negro male subjects. After observing eight or nine of the pictures, both identified the defendant.

David Nantze and his wife, Ruth, also testified at the evidentiary hearing. Their testimony was that the defendant was one of the persons who attacked Mr. Nantze on the evening in question. They further testified that the identifications were based on observations at the scene, rather than because they were shown pictures at the hospital.

Before the jury, David Carl Nantze testified that at approximately 10:30 p. m. on July 14, 1971, he and his wife had delivered a car to his brother at the Mistletoe Express. As they were returning home, driving north on Walnut, his car stalled near Thirteenth Street. He gave his wife a pocket knife for protection and walked back to the Mistletoe Express Company and told his brother that he needed some help. He returned to his vehicle and opened the hood, attempting to see if he could get it running. Two persons, one of whom he identified in court as defendant, came up as if to help. They looked under the hood and he heard someone say " 'Hit him,' or 'Get him.' " (Tr. 39) As he looked up to see what was happening, one of the persons hit him. He grabbed the person who struck him around the neck and they fell to the street. He next remembered awakening in Children's Hospital. He was hospitalized for approximately two weeks with a fractured skull and broken nose.

Ruth Nantze testified that she was with her husband on the evening in question when their car stalled. Her husband gave her a pocket knife and returned to the Mistletoe Company to obtain help from his brother. He returned to the car a short time later and attempted to find the engine difficulty. Two persons walked up and stated that he couldn't leave his car parked there and they would help him fix it. One of the persons struck her husband and her husband grabbed him, taking him to the pavement. The second person, whom she identified in court as the defendant, stomped on her husband's head. The person that was on the ground got up and grappled with her from behind, attempting to take the

pocket knife from her. Defendant interceded and tried to stop the second person from taking the knife. She heard sirens and both persons left the scene. She testified that she was about six months pregnant at the time of the incident.

Charles Barr testified that he was previously charged with committing the same offense with the defendant. He entered a plea of guilty to the offense and was serving a term in the penitentiary. He observed a car stalled at Thirteenth and Walnut and went over to attempt to help. He looked under the hood and heard someone say, " 'Hit him' or 'Get him.' " He looked up and Nantze threw a blow at him and they started fighting. He further testified that the defendant came up and pulled him from Nantze. He testified that he did not see the defendant hit or kick Nantze. He gave a statement to the police because he was scared. At this point, he was declared to be a hostile witness and the statement he had previously given to the police was introduced.

The defendant did not testify nor was any evidence offered in his behalf.

In the second stage proceedings, Dan Gray, the court clerk, and Officer Summers testified concerning the previous conviction.

■ The first proposition asserts that the verdict is not supported by the evidence. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict since it is the exclusive province of the jury to weigh the evidence and determine the facts. Turner v. State, Okl.Cr., 479 P.2d 631.

■ The final proposition contends that the punishment is excessive. Defendant argues under this proposition that the jury was inflamed by the circumstances that defendant and Barr were black while the victim and his wife were white and that Mrs. Nantze was pregnant. We have previously held that this Court is without authority to modify sentence unless we can

conscientiously say that under all the facts and circumstances the sentence was so excessive as to shock the conscience of this Court. Roberts v. State, Okl.Cr., 473 P.2d 264. From the foregoing statement of facts we cannot conscientiously say that the sentence imposed shocks the conscience of this Court. This Court certainly cannot condone defendant's actions in participating in this unwarranted brutal beating of an innocent victim.

In conclusion we observe the record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.

BRETT and SIMMS, JJ., concur.